24-1363

---

## United States Court of Appeals for the Federal Circuit

---

**DELFASCO LLC,**

Appellant,

v.

**SECRETARY OF THE ARMY,**

Appellee

---

Petition for Review from the Armed Services Board of Contract Appeals, Nos. 63280, 63402, Administrative Judge Mark Melnick, Administrative Judge Richard Shackelford, Administrative Judge Owen Wilson

---

### OPENING BRIEF OF APPELLANT, DELFASCO LLC

John J. O'Brien
David S. Cohen
Cordatis, LLP
1011 Arlington Blvd,
Suite 375
Arlington, VA   22209
jobrien@cordatislaw.com
dcohen@cordatislaw.com
(202) 342-2550
Attorney for Appellant
Delfasco LLC

March 26, 2024

## CERTIFICATE OF INTEREST

Counsel for Appellant, Delfasco LLC certifies the following:

1.    The full name of every party or amicus represented by me is:

Delfasco LLC.

2.    The name of the real party in interest represented by me is:

Delfasco LLC.

3.    All parent corporations and any publicly held companies that own 10 percent

of the stock of a party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners and associates that (a) appeared

for the entities in the originating court or agency or (b) are expected to appear in

this court for the entities not including those who have already entered an

appearance in this court.

None

5.    I am unaware of any cases pending in this or any other court or agency that

meet the criteria under Fed. Cir. R. 47.5(a).  I am unaware of any pending cases

that will directly affect or be directly affected by this court's decision in the

pending appeal.

March 26, 2024

/s/ John J. O'Brien
JOHN J. O'BRIEN

i

## **TABLE OF CONTENTS**

**PAGE**

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF CONTENTS .................................................................... ii

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF RELATED CASES ............................................... iv

BRIEF OF APPELLANT, DELFASCO LLC ..................................... 1

JURISDICTIONAL STATEMENT...................................................... 1

STATEMENT OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE ........................................................... 1

SUMMARY OF THE ARGUMENT.................................................... 5

ARGUMENT ...................................................................................... 8

    I.     Standard of Review........................................................ 8

    II.    On Summary Judgment, The Board's Reliance On
          Extrinsic Evidence To Supply A Definition Of
          Steel That Excluded Gray Iron Was Improper
          Where Other Extrinsic Evidence Indicated Gray
          Iron Could Also Be Regarded As Steel ........................ 10

    III.   The Board Improperly Refused To Consider
          Evidence Of The Parties' Prior Conduct. ..................... 15

CONCLUSION AND STATEMENT OF RELIEF SOUGHT.......................... 21

Addendum
Certificate of Compliance
Certificate of Service

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .............................. 8, 9, 14

*Crown Operations Intern., Ltd. v. Solutia Inc.,*
    289 F.3d 1367 (Fed.Cir. 2002) ............................................................ 8, 9, 14

*England v. Contel Advanced Sys., Inc.,* 384 F.3d 1372 (Fed.Cir. 2004) ............. 9

*Jay v. Secretary of Dept. of Health and Human Services,*
    998 F.2d 979 (Fed.Cir. 1993) .................................................................. 7, 14

*J.D. Hedin Construction Co. v. United States,*
    347 F.2d 235, 171 Ct.Cl. 70 (1965) ............................................................ 18

*Metric Constructors, Inc. v. NASA,* 169 F.3d 747 (Fed.Cir. 1999).................... 15

*Pagan v. Dep't of Veterans Affairs,* 170 F.3d 1368 (Fed.Cir. 1999) .............. 7, 20

*Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464 (1962) ....................... 7, 8, 15

*Rex Sys., Inc. v. Cohen,* 224 F.3d 1367 (Fed.Cir. 2000) ...................................... 8

*Rockies Express Pipeline LLC v. Salazar,* 730 F.3d 1330 (Fed.Cir. 2013) ......... 9

*TEG-Paradigm Env't, Inc. v. United States,* 465 F.3d 1329 (Fed.Cir. 2006).... 10

*Wilner v. United States,* 24 F.3d 1397 (Fed.Cir. 1994)................... 16, 17, 18, 19

**STATUTES AND REGULATIONS**

28 U.S.C. § 1295 ................................................................................................ 1

41 U.S.C. § 7104 ................................................................................................ 1

41 U.S.C. § 7107 ......................................................................................... 1, 8, 9

## STATEMENT OF RELATED CASES

Pursuant to United States Court of Appeals for the Federal Circuit Rules of Practice 28(a)(4) and 47.5, counsel for Appellant, Delfasco LLC, certifies:

1.      I am unaware of any other appeal in or from the same civil action or proceeding in the originating tribunal that was previously before this or any other appellate court.

2.      I am unaware of any case pending in this or any other tribunal that will directly affect or be directly affected by this court's decision in the pending case.

/s/ John J. O'Brien
JOHN J. O'BRIEN

March 26, 2024

## BRIEF OF APPELLANT, DELFASCO LLC

## JURISDICTIONAL STATEMENT

This case comes on appeal from a final decision of the Armed Services Board of Contract Appeals ("ASBCA"), which had subject matter jurisdiction pursuant to 41 U.S.C. § 7104(a). This Court has appellate jurisdiction pursuant to 41 U.S.C. § 7107(a)(1)(A) and 28 U.S.C. § 1295(a)(10). The ASBCA issued its final decision on September 26, 2023, denying Delfasco's ASBCA appeal. Delfasco timely filed a notice of appeal on January 11, 2024. *See* 41 U.S.C. § 7107(a)(1)(A).

## STATEMENT OF THE ISSUE

1.    Whether the ASBCA erred in granting summary judgment in favor of the government where there were genuine issues of material fact in dispute and the Board failed to view the evidence in the light most favorable to the party opposing the motion.

## STATEMENT OF THE CASE

This case concerns the proper interpretation of an Economic Price Adjustment ("EPA") clause, contained in a contract to produce inert practice bombs, entered into between Delfasco and the Army.

On January 7, 2016, the Army awarded Delfasco a firm fixed price, indefinite delivery/indefinite quantity ("IDIQ") contract for, among other things,

1

delivery of suspension lugs and two models of practice bombs, the MK-76 and BDU-33. APPX69-70. The contract contains an EPA clause that provides for increases or decreases in the line item pricing based on fluctuations in the price of steel. APPX102. The contract did not define the term "steel" or what constitutes "steel." APPX102-104.

In April of 2020, Delfasco informed the agency that it would be filing a Request for Equitable Adjustment ("REA"). APPX622. Subsequently, Delfasco informed the agency that it would file the REA after contract completion. APPX623. On December 6, 2021, the contracting officer emailed Delfasco stating, "[a]s recently discussed we look forward to receiving Delfasco's request for adjustment due to steel costs under contract W52P1J-16-D-0039 by the end of January 2022." APPX640.

On February 3, 2022, Delfasco submitted an EPA claim to the Army based on increases in the cost of steel. APPX651-663. The EPA claim related only to increased costs for the practice bombs bodies. APPX651. On February 15, 2022, the contracting officer denied Delfasco's claim for three reasons:

- The Army claimed that the EPA request included labor, overhead, G&A, and/or profit in the costs.

- The Army claimed Delfasco failed to provide notice within 60 days after the increase in costs.

- The Army claimed Delfasco's claim was for less than 3% of the total contract price.

APPX668. Delfasco filed a notice of appeal of this decision, with the ASBCA, on May 13, 2022. APPX715-716.

Subsequent to the agency's denial, on February 25, 2022, John Longhurst of Delfasco had a conversation with the contracting officer, Bridget Kramer, regarding the denial of Delfasco's claim. APPX685. Following that conversation, on April 27, 2022, Delfasco submitted a revised EPA claim for the increased steel costs it incurred on the contract. APPX682, APPX685-692. Among other things, the revised claim included additional invoices and a related increase in the claim amounts. APPX685-692; APPX693, APPX697-709.[1] The revised EPA claim was denied by the contracting officer on July 7, 2022. APPX721-725. The bases for the denial were similar, but not identical, to the bases on which the original claim was denied. APPX721-725. Relevant to this appeal, the denial did not allege that Delfasco's EPA claim was outside the scope of the EPA clause because the bomb bodies were made of gray iron rather than steel. APPX721-725.

Delfasco appealed the denial of its revised claim to the ASBCA, on September 2, 2022. APPX735-736. On that same date, Delfasco also filed a joint

---

[1] The invoices for the bomb bodies often state they are made out of gray iron, which is in accord with the practice bomb bodies' contract drawings. APPX697, APPX704-709; APPX109.

motion to consolidate its two appeals, which the Board granted on September 13, 2022.

Delfasco filed its Complaint with the ASBCA on October 13, 2022 and the Army filed its Answer on November 14, 2022. APPX742-753, APPX754-779. The government's Answer included a Part II, which contained 22 paragraphs of affirmative averments and a Part III addressing affirmative defenses. APPX771-779. In none of these affirmative averments, or anywhere else in its Answer, did the agency claim that the bomb bodies were not made out of steel. APPX771-779.

On or about October 19, 2022, the agency filed the government's Rule 4 file in the consolidated appeals. The Army supplemented the Rule 4 file, on or about April 21, 2023, and Delfasco filed an additional supplement to the Rule 4 file on May 1, 2023.

Also, on May 1, 2023, the agency filed the Government's Motion for Summary Judgment and Request to Stay Proceedings.[2] APPX801-824. In the summary judgment motion, the government argued, for the first time, that Delfasco "bases its claim on the price of iron rather than steel." APPX815. The Army also argued that Delfasco "failed to comply with the steel EPA clause's notice

---

[2] On May 3, 2023 Delfasco concurred in the government's request to stay all proceedings pending resolution of the motion for summary judgment. The ASBCA issued an order staying all proceedings and deadlines unrelated to the government's motion for summary judgment the following day, May 4, 2023. At the time of the Board's stay, the parties had not yet commenced discovery.

requirements" and Delfasco's "increased steel costs, do not meet the steel EPA

clauses requirement that they equal at least the 3% of the total Contract price."

APPX815. Delfasco filed its response to the motion for summary judgment on

May 31, 2023 and the Army filed its reply on June 30, 2023. APPX826-853,

APPX909-927.

On September 25, 2023, the ASBCA granted the Army's motion for

summary judgment on a single basis. The Board found that the practice bomb

bodies, on which the EPA claim is based, were made of gray iron. APPX1. The

Board ruled that that the EPA clause was inapplicable because it provided for price

adjustments based upon fluctuations in the price of steel, and therefore did not

apply to Delfasco's increased costs incurred for the practice bomb bodies, which

were made of gray iron. APPX1. The Board declined to consider the other grounds

advanced by the government in support of its motion for summary judgment.

APPX7.

Delfasco timely appealed the ASBCA's decision to this Court based on the

errors in the Board's decision described below.

## SUMMARY OF THE ARGUMENT

The Board granted summary judgment to the Army on a single basis. The

Board found that the practice bomb bodies, on which Delfasco's claim is based,

were made of gray iron and therefore the EPA clause, which provides for price

adjustments based upon fluctuations in the price of steel, was inapplicable. APPX1.[3] The Board's Opinion was in error because there are genuine issues of material fact that preclude granting summary judgment to the Army.

The EPA clause does not define the term "steel" or what constitutes "steel" and the meaning of the term is ambiguous with respect to the EPA clause. APPX102-104. In determining the appropriate definitions for both the term "steel" and the term "gray iron," the Board relied on extrinsic evidence including definitions from a number of different online dictionaries. APPX4. However, there was other extrinsic evidence, presented by Delfasco, which indicated there were more than 3500 different types of steel with different physical, chemical and environmental properties. APPX843. Other extrinsic evidence indicated that gray irons are sometimes referred to as steels with graphite in them. APPX843.

Once the Board determined that it would rely on extrinsic evidence to interpret the meaning of the term "steel," it was error for the Board, on summary judgment, to pick and choose among the definitions and to ultimately select definitions favorable to the agency, the party moving for summary judgment. On summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 473

---

[3] The Board did not consider the other grounds advanced by the government in its motion for summary judgment. APPX7.

6

(1962). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Jay v. Secretary of Dept. of Health and Human Services*, 998 F.2d 979, 982 (Fed.Cir. 1993).

The Board also erred in refusing to consider evidence that, prior to the motion for summary judgment, the agency never claimed the EPA clause was inapplicable because the bomb bodies were not made out of steel. The contracting officer never asserted that the bomb bodies were not made of steel in her denials of Delfasco's original and revised EPA claims. APPX668, APPX721-725. The agency also failed to raise this defense in its Answer to Delfasco's Complaint, despite the fact that Part II of the answer contained 22 paragraphs of affirmative averments, and Part III pled an affirmative defense. APPX771-779. Furthermore, there is no evidence in the record that the agency mentioned this issue in any discussions between itself and Delfasco.

Where a contract term is ambiguous, it is the role of the Board or the court to implement the intent of the parties at the time the agreement was made. *Pagan v. Dep't of Veterans Affairs*, 170 F.3d 1368, 1371 (Fed.Cir. 1999). The fact that the agency's argument, that the bomb bodies are not made of steel and therefore not within the scope of the EPA clause, was raised for the first time in the agency's motion for summary judgment is, at minimum, evidence that this was not the

Army's intent at the time the agreement was made. It was error for the Board to disregard this evidence.

## ARGUMENT

### I.   Standard of Review

This Court reviews a Board's grant of summary judgment de novo. 41 U.S.C. § 7107(b)(1); *Rex Sys., Inc. v. Cohen*, 224 F.3d 1367, 1371 (Fed.Cir. 2000) ("This court reviews the Board's conclusions of law, including grants of summary judgment, without deference."). On summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed.Cir. 2002) citing *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 473 (1962). Doubts must be resolved in favor of the nonmovant. *Id.* citing *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 582, (1976); *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1274, (Fed.Cir. 1995).

"Summary judgment is appropriate when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "Issues of fact are genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A disputed fact is

material if it might affect the outcome of the suit such that a finding of that fact is

necessary and relevant to the proceeding. *Id.*

> The Court has said that summary judgment should be granted where
> the evidence is such that it "would require a directed verdict for the
> moving party." *Sartor v. Arkansas Gas Corp.,* 321 U.S. 620, 624, 64
> S.Ct. 724, 727, 88 L.Ed. 967 (1944). And we have noted that the
> "genuine issue" summary judgment standard is "very close" to the
> "reasonable jury" directed verdict standard: "The primary difference
> between the two motions is procedural; summary judgment motions
> are usually made before trial and decided on documentary evidence,
> while directed verdict motions are made at trial and decided on the
> evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v.
> NLRB,* 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 2171, n. 11, 76
> L.Ed.2d 277 (1983). In essence, though, the inquiry under each is the
> same: whether the evidence presents a sufficient disagreement to
> require submission to a jury or whether it is so one-sided that one
> party must prevail as a matter of law.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

Additionally, contract interpretation is a question of law that the Court will

review de novo. *Rockies Express Pipeline LLC v. Salazar*, 730 F.3d 1330, 1335–36

(Fed.Cir. 2013). The "decision of the agency board on a question of law is not final

or conclusive." 41 U.S.C. § 7107(b)(1). The "interpretation of a contract by the

ASBCA is a question of law that is reviewed without deference on appeal."

*England v. Contel Advanced Sys., Inc.*, 384 F.3d 1372, 1377 (Fed.Cir. 2004).

**II.    On Summary Judgment, The Board's Reliance On Extrinsic Evidence To Supply A Definition Of Steel That Excluded Gray Iron Was Improper Where Other Extrinsic Evidence Indicated Gray Iron Was Also Regarded As Steel.**

The ASBCA granted summary judgment to the Army on a single basis. The Board found that the practice bomb bodies, on which the EPA claim is based, were made of gray iron. APPX1. The Board ruled that because the EPA clause provided for price adjustments based upon fluctuations in the price of steel, it was inapplicable to Delfasco's claim for the increased costs it incurred for the practice bomb bodies. APPX1. The Board stated, "[g]iven our ruling that the gray iron contained in the bomb bodies is not steel, we do not consider the other grounds advanced by the government in support of its motion." APPX7. The Board's granting of summary judgment was improper because there are genuine issues of material fact that preclude granting summary judgment to the Army.

The EPA clause does not define the term "steel" or what constitutes "steel." APPX102-104. Nevertheless, the Board held that "[t]he plain meaning of steel does not encompass gray iron." APPX1, *see also* APPX7 (same). The Board, citing *TEG-Paradigm Env't, Inc. v. United States,* 465 F.3d 1329, 1338 (Fed.Cir. 2006), further stated "'When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the [Board] may not look to extrinsic evidence to interpret its provisions.'" APPX3.

Despite holding that the term "steel" was unambiguous and therefore "'the [Board] may not look to extrinsic evidence to interpret its provisions,'" that is exactly what the Board did. APPX3. The Board, relying upon and quoting from "MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/steel (last visited Aug. 18, 2023)" stated that "Steel's ordinary definition is 'commercial iron that contains carbon in any amount up to about 1.7 percent as an essential alloying constituent, is malleable when under suitable conditions, *and is distinguished from cast iron by its malleability and lower carbon content.*'" APPX4 (emphasis added by the Board). The Board next relied upon "DICTIONARY.COM, https://www.dictionary.com/browse/steel (last visited Aug. 18, 2023)" to provide a second, different definition for "steel." APPX4. This definition of "steel" "is 'any of various modified forms of iron, artificially produced, *having a carbon content less than that of pig iron. . . .*'" APPX4 (emphasis added by Board). And the Board relied on yet another definition of "steel" stating "[s]till another is "[a] generally hard, strong, durable, malleable alloy of iron and carbon, usually containing between 0.2 and 1.5 percent carbon, often with other constituents. . . ." APPX4, n.2 citing "THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=steel (last visited Aug. 18, 2023)."

The Board also relied upon extrinsic evidence to define "gray iron":

11

Gray iron is defined separately as "*pig or cast iron* containing much graphitic carbon which causes its fracture to be dark gray." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/gray%20iron (last visited Aug. 18, 2023) (emphasis added). One more similarly says it is "*pig iron or cast iron* having much of its carbon in the form of graphite and exhibiting a gray fracture." DICTIONARY.COM, https://www.dictionary.com/browse/gray-iron (last visited Aug. 18, 2023) (emphasis added).

APPX4 (emphasis added by Board).[4]

---

[4] The agency also relied on extrinsic evidence regarding the meaning of the term "steel" in its motion for summary judgment. APPX814-815, APPX817. Thus, Delfasco's response to the Army's summary judgment motion stated:

Finally, the agency is relying on extrinsic evidence, from the "worldsteel Association" website (https://worldsteel.org/about-steel/about-steel/, last visited by the agency on May 1, 2023) to allege that "[i]ron and steel are different materials." MSJ at 14, ¶ 37 (SUMF ¶ 37).[4] The agency then relies on this same website evidence (cited as "SUMF ¶ 37") to claim that the bomb body castings are outside the scope of the EPA clause. MSJ at 17.

The Army's reliance on extrinsic evidence for key components of its argument defeats its motion for summary judgment. *See Raytheon Company*, ASBCA No. 58212, 15-1 BCA ¶ 35,999 ("On an issue of contract interpretation, *summary judgment may only be granted where there is no ambiguity* in the contract terms at issue *which would require our reliance upon extrinsic evidence to resolve the matter.*"); *Hanley Industries, Inc.*, ASBCA No. 58198, 16-1 BCA ¶ 36,244 (Board, in denying cross motions for summary judgment, noted that "both parties have relied upon extrinsic evidence to explain their interpretations.")

APPX840.

While the Board relied on extrinsic evidence to support its conclusion that

the plain meaning of "steel" does not encompass "gray iron," the Board ignored

extrinsic evidence, supplied by Delfasco, that indicated that gray iron is sometimes

referred to as steel. Delfasco explained:

"An Introduction To Grey Iron," states:

> **These are iron-carbon alloys (and a form of cast iron)**
> with carbon contents in excess of 2%, generally in the
> range 2 to 4% with the addition of about 1% silicon.
> They differ from steels in that the carbon present exceeds
> the solubility limit of 1.7%. This carbon is present in the
> form of austenite while the excess exists as graphite at
> room temperature. Consequently, **grey irons are**
> **sometimes referred to as steels with graphite in them.**

https://www.azom.com/article.aspx?ArticleID=783 (emphasis added)
(last visited 5/23/2023).  The fact that grey irons are "referred to as
steels" supports Delfasco's point that the Contract's Economic Price
Adjustment's undefined use of "STEEL" encompasses Delfasco's
bomb body castings. *See also,* https://www.zen-
young.com/news/characteristics-of-ductile-iron.html (last visited
5/24/2023) ("**Nodular cast iron can be regarded as steel with**
**graphite balls dispersed in the matrix**.")

APPX841. (underlining and last bolding added). Furthermore, as Delfasco pointed

out, the website relied upon by the agency, in its summary judgment motion, also

undercuts the agency's argument:

> The website on which the Army relies notes that, "*Steel is not a single*
> *product.* There are more than 3,500 different grades of steel with
> many different physical, chemical, and environmental properties."
> https://worldsteel.org/about-steel/about-steel/ "How many types of
> steel are there?" (last visited 5/22/2023) (emphasis added).

APPX843.

Once the Board determined that it would rely on extrinsic evidence to

interpret the meaning of the term "steel," it was error for the Board, on summary

judgment, to pick and choose among the definitions upon which to rely:

> On summary judgment, the evidence must be viewed in the light most
> favorable to the party opposing the motion, *Poller v. Columbia Broad.*
> *Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962),
> with doubts resolved in favor of the nonmovant, *Cantor v. Detroit*
> *Edison Co.,* 428 U.S. 579, 582, 96 S.Ct. 3110, 49 L.Ed.2d 1141
> (1976); *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1274,
> 35 USPQ2d 1035, 1038 (Fed.Cir.1995).

*Crown Operations Intern., Ltd. v. Solutia Inc.,* 289 F.3d 1367, 1375 (Fed.Cir.

2002). "When ruling on summary judgment, "[c]redibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts

are ... not those of a judge.... The evidence of the nonmovant is to be believed, and

all justifiable inferences are to be drawn in his favor." *Jay v. Secretary of Dept. of*

*Health and Human Services*, 998 F.2d 979, 982 (Fed.Cir. 1993) citing *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986).

Here, rather than viewing the evidence in the light most favorable to the

nonmoving party, Delfasco, and resolving doubts in favor of the nonmovant, the

Board picked from among the definitions available in the extrinsic evidence and

ultimately relied upon definitions that were favorable to the agency's position. In

doing so, the Board failed to properly apply the appropriate standard for summary

judgment and failed to view the evidence in the light most favorable to the

nonmovant, Delfasco. This was improper and this Court should reverse the Board's

decision and remand the case to the Board for further proceedings.[5]

## III.    The Board Improperly Refused To Consider Evidence Of The Parties' Prior Conduct.

The first time that the agency claimed that the practice bomb bodies were

made out of iron rather than steel (and therefore the EPA clause was inapplicable)

was in its motion for summary judgment. APPX801, APPX807, APPX809-812,

---

[5] The Board's discussion of trade practice and custom was also in error. The Board stated that "Delfasco's proffered extrinsic evidence might be characterized as evidence of trade practice" but the Board refused to consider it stating "we 'should accept evidence of trade practice only where a party makes a showing that it relied reasonably on a competing interpretation of the words when it entered the contract.'" APPX5 citing *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 752 (Fed.Cir. 1999). However, this Court, in *Metric Constructors*, also stated, "courts should use evidence of trade practice and custom *not only to determine the meaning of an ambiguous provision*, *but to determine whether a contract provision is ambiguous in the first instance*." *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 752 (Fed.Cir. 1999) (emphasis added). The Board failed to do this. Here, neither party submitted declarations regarding their respective interpretations of the word steel at the time they entered into the contract. However, the lack of declarations, by both parties, cannot justify, *on a summary judgment motion*, the Board's picking and choosing among competing statements in the extrinsic evidence. The evidence must be viewed in the light most favorable to the party opposing the motion. *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 473 (1962). Here, the record contains extrinsic evidence of trade practice indicating that gray iron can be referred to as steel. APPX841-843. This evidence supports a finding that the term steel, in the EPA clause, is ambiguous. It was error for the Board to completely disregard this evidence, which favored the non-movant, in favor of other evidence and definitions more favorable to the movant. *Id.*

APPX815-818.[6] Not only did the contracting officer fail to raise this alleged

defense in either of the denials of Delfasco's EPA claims, the agency also

neglected to raise this defense in its Answer to Delfasco's Complaint. APPX668,

APPX721-725, APPX754-779.

The Board dismissed this evidence citing *Wilner v. United States,* 24 F.3d

1397, 1401-03 (Fed.Cir. 1994) (en banc) for the proposition that "a contracting

officer's decision is not 'an evidentiary admission of the extent of the

government's liability,' and the contractor must prove liability and damages *de

novo* to the Board on a clean slate." APPX7. The Board also stated "[t]he

government's final decisions and phone call did not predate the dispute events. Nor

does Delfasco cite any other authority for the proposition that failure by a

---

[6] In response, Delfasco's "Statement of Genuine Issues of Material Fact" provided:

> … while the EPA clause states that it applies to the price for "STEEL" only, the EPA clause does not define what constitutes "STEEL." Furthermore, the contracting officer's two letters denying Delfasco's claims do not allege that the bomb bodies included in Delfasco's claims are not made of steel.  The Army's February 15, 2022 denial letter provides three reasons for denying the claim, none of which allege that the bomb bodies are not made of steel.  R4 Tab 47.  The Army's July 7, 2022 denial of Delfasco's revised claim also does not state that the bomb bodies are not made steel.  R4 Tab 70 at 792-96.  Similarly, the agency did not allege that the bomb bodies were not steel in the parties' telephone conference of February 25, 2022, with the contracting officer.  *See* R4 Tab 70 at 792-96.

APPX827-828, *see also*, APPX830, APPX832, APPX834-836, APPX838-839.

contracting officer's denial to address every aspect of a claim constitutes evidence that the government consents to the points not discussed." APPX7. The Board's decision goes too far.

First, Delfasco has never argued that the agency's failure to claim that the bomb bodies are not made out of steel means "that the government consents to the point[ ]." APPX7. Rather, Delfasco argued that the agency's failure to raise the allegation that the bomb bodies were not steel, at any time prior to its motion for summary judgment, was *evidence* of the agency's contemporaneous interpretation. APPX839 ("the agency's contemporaneous conduct *provides evidence* that the agency interpreted the clause in the same manner as Delfasco (*i.e.* the bomb body castings were within the scope of the EPA clause, based on the parties' intent and the parties' contemporaneous interpretation." (Emphasis added).)

Second, the Board's reliance on *Wilner* is misplaced. In *Wilner* this Court stated, "in court litigation, a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision. *De novo review precludes reliance upon the presumed correctness of the decision*." *Wilner v. United States,* 24 F.3d 1397, 1401 (Fed.Cir. 1994) (en banc) (emphasis added).[7] *Wilner* states:

---

[7] The *Wilner* Opinion was premised on the language of the Contract Disputes Act ("CDA") and expressly overruled the previous holding in *J.D. Hedin Construction Co. v. United States,* 347 F.2d 235, 171 Ct.Cl. 70 (1965). In *Hedin,* "the court

17

> The plain language of the CDA provides that "[s]pecific findings of fact [by the contracting officer] ... shall not be binding in any subsequent proceeding," 41 U.S.C. § 605(a), and that an action in court on a claim "shall proceed de novo...." 41 U.S.C. § 609(a)(3). Contrary to the plain language of the CDA, however, <u>Hedin</u> makes a contracting officer's findings binding upon the government as strong presumptions or evidentiary admissions in a subsequent proceeding unless they are rebutted....

*Id.* at 1402 (emphasis added, footnote omitted).

In the present case, however, Delfasco is not attempting to rely "upon the presumed correctness of the [contracting officer's] decision." *Id*. at 1401. To the contrary, it is Delfasco's position that the statements made in the contracting officer's decisions are incorrect and must not be relied upon.

*Wilner* properly held that the CDA prohibits the contracting officer's findings of fact from being considered binding in any subsequent proceeding and that subsequent litigation shall proceed de novo. *Id.* at 1402. *Wilner* further states, however, "[n]either should anything we say today be viewed as suggesting that a contracting officer's final decision has no place in a board of contract appeals proceeding or in litigation in the Court of Federal Claims." *Id.* at 1403.[8]

––––––––––––––––––––

noted that the 'grant of an extension of time by the contracting officer carries with it the administrative determination (admission) that the delays resulted through no fault of the contractor.'" *Wilner v. United States,* 24 F.3d 1397, 1402 (Fed.Cir. 1994).

[8] As one example, the Court noted that a contracting officer's decision —or at least the submission of a claim requesting such a decision—is necessary to establish jurisdiction in the board or the court. *Id.* at 1403.

Delfasco is not relying on the contracting officer's findings or using them in a manner that is inconsistent with the requirement for de novo review. Instead, Delfasco is relying on the fact that the record before the Board establishes that the very first time that the agency claimed the bomb bodies were not made of steel was in the agency's motion for summary judgment. APPX801, APPX807, APPX809-812, APPX815-818. There is no evidence that the agency ever took this position during performance of the contract, during claim discussions with Delfasco,[9] in the contracting officer's decisions denying the claims, or in the agency's Answer. APPX668, APPX721-725, APPX771-779. Furthermore, in its motion for summary judgment, the agency relied on the practice bomb body drawings, which indicate the practice bomb bodies are made out of gray iron. APPX809. These drawings were in the government's possession since the inception of the contract and even before. APPX62 (drawing created March 6, 1995, last revised June 28, 2012), APPX109 (drawing created January 21, 1987, last revised April 16, 2003) Additionally, the agency relied on the invoices Delfasco submitted to the agency in

---

[9] The Board states, "Delfasco's only cited evidence of the contents of the February 25, 2022, phone call is the final decision. That document does not purport to fully recite what was said during that discussion." APPX6, n.6 (citations to record omitted). While the Board's statement is true, the Army's subsequent decision denying the claim specifically references the February 25 teleconference with Delfasco and responds to statements made during that telephone conference. If the agency had taken the position, during the telephone conference, that the claim was invalid because the bomb bodies are not made of steel, that assertion would have likely been repeated in the subsequent final decision denying the claim.

support of its claims. APPX811. The agency's failure to claim the EPA clause was not applicable because the bomb bodies were not made of steel, at any time prior to the motion for summary judgment, is, at minimum, evidence that this was not the agency's understanding or intent at the time the agreement was made, and that the agency held this view *up until the filing of its motion for summary judgment*. The Board's failure to give the agency's conduct proper weight and to draw all reasonable inferences from it in appellant's favor is another reason to reverse the Board's decision.

As this Court has stated, in interpreting a contract, "[i]f any ambiguity is found, [this Court's] role is to implement the intent of the parties at the time the agreement was made." *Pagan v. Dep't of Veterans Affairs*, 170 F.3d 1368, 1371 (Fed.Cir. 1999) citing *King v. Department of Navy,* 130 F.3d 1031, 1033 (Fed.Cir.1997).[10] The fact that the Army's assertion regarding the composition of appellant's bomb bodies was never raised until the agency's motion for summary judgment is, at minimum, evidence that this was not the Army's intent at the time the agreement was made. It was error for the Board to completely disregard this

---

[10] In the present case, neither party provided declarations or affidavits regarding the party's intent at the time the agreement was made.

evidence. This Court should reverse the Board's decision and remand the case to

the Board for further proceedings. [11]

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons stated above, the decision of the ASBCA should be reversed

and this case remanded for a decision on the merits.


Respectfully submitted,

/s/ John J. O'Brien
JOHN J. O'BRIEN
Cordatis, LLP
1011 Arlington Blvd,
Suite 375
Arlington, VA  22209
jobrien@cordatislaw.com
(202) 342-2550
Attorney for Appellant
Delfasco LLC

March 26, 2024

---

[11] The Army's current interpretation means the EPA clause offers little or no protection to appellant or any other manufacturer of practice bombs. The Army concedes "as the appellant states in its claim, the bomb bodies or 'castings' are the 'major component' of the practice bombs." APPX810. The Army further states, "some smaller parts of the practice bombs such as the cone and fins are made of steel." APPX813. Since the EPA clause also requires that the escalation in the price of steel must be at least 3% *of the total contract value*, the interpretation that the EPA clause only applies to the smaller parts of the practice bomb makes it very unlikely that the clause could ever be of assistance to the contractor.

21

24-1363

---

## United States Court of Appeals for the Federal Circuit

---

## DELFASCO LLC,

Appellant,

v.

## SECRETARY OF THE ARMY,

Appellee

---

Petition for Review from the Armed Services Board of Contract Appeals, Nos. 63280, 63402, Administrative Judge Mark Melnick, Administrative Judge Richard Shackelford, Administrative Judge Owen Wilson

---

## ADDENDUM TO OPENING BRIEF OF APPELLANT, DELFASCO LLC

John J. O'Brien
Cordatis, LLP
1011 Arlington Blvd,
Suite 375
Arlington, VA 22209
jobrien@cordatislaw.com
(202) 342-2550
Attorney for Appellant
Delfasco LLC

# **TABLE OF CONTENTS**

**PAGE**

ASBCA Decision .......................................................................... APPX1

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Delfasco LLC | )    ASBCA Nos. 63280, 63402 |
| | ) |
| Under Contract No. W52P1J-16-D-0039 | ) |

APPEARANCE FOR THE APPELLANT:    David S. Cohen, Esq.
                                 Cordatis LLP
                                 Arlington, VA

APPEARANCES FOR THE GOVERNMENT:    Scott N. Flesch, Esq.
                                   Army Chief Trial Attorney
                                   MAJ Ronald C. Walton, JA
                                   MAJ Jason C. Coffey, JA
                                   Michael McDermott, Esq.
                                   Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MELNICK
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This consolidated appeal is about a contract for practice munitions. It contained an economic price adjustment (EPA) clause that provided for a price adjustment based upon fluctuations in the price of steel. Appellant, Delfasco, LLC (Delfasco), seeks an adjustment due to increases in its price for bomb bodies made of gray iron, which it contends is steel. The government moves for summary judgment. The plain meaning of steel does not encompass gray iron. Additionally, Delfasco has neither met the standard to consider any purported contrary evidence of trade practice, nor made a showing that trade practice equates steel with gray iron. Accordingly, the government's motion is granted.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

On January 7, 2016, the government awarded to Delfasco the firm-fixed price, indefinite delivery/indefinite quantity contract identified above. Among the items for delivery were two different models of practice bombs, the MK-76 MOD No. 5, and the BDU-33 D/B. (R4, tab 2; gov't mot., proposed findings of fact [GPFF] ¶ 1; app. opp'n, statement of genuine issues [AGI] ¶ 1) The contract contained an EPA clause applicable only to the price of steel. Upon Delfasco providing a required notification of change in its steel price the parties were to negotiate an adjustment of the contract's line-item unit prices. It expressly prohibited adjustments based on price changes for

**APPX1**

material other than steel. There were other specific requirements and limitations not relevant to this decision. (R4, tab 2 at 42-44)[1]

On March 16, 2016, Delfasco obtained a price quote from Brillion Iron Works for casting what it referred to as Part 2193777, described as a bomb body and elsewhere associated with the MK-76 MOD 5 (R4, tabs 66, 208 at 1301; GPFF ¶¶ 18-19; AGI ¶ 18). The material from which the bomb body was cast was gray iron, ASTM Class 20 (R4, tabs 66, 208 at 1301; GPFF ¶¶ 18-19, 21; AGI ¶¶ 18-20). This is confirmed by the bomb body drawings, which state the MK-76 MOD No. 5 material is "Iron casting, gray in accordance with ASTM A48 Class 20" (R4, tab 208 at 1301). Brillion initially quoted $11.57 per casting, which included a material surcharge based upon a rate that would adjust every month (R4, tab 66). The body of the other practice bomb, BDU-33 D/B, was also cast from gray iron, or more specifically, iron castings, gray per ASTM A48/A48M-00 Class 20S (R4, tab 220; GPFF ¶ 32; AGI ¶ 32). After subtracting 22 cents in packaging charges, Delfasco used the remaining $11.35 of the Brillion quote to establish the base or benchmark price for both bomb body castings (GPFF ¶¶ 16, 32; AGI ¶¶ 8, 16, 32).

On February 3, 2022, Delfasco submitted a certified claim under the EPA clause for the escalation of the cost of steel above the base in the two practice bombs. Citing an attached spreadsheet purporting to show increases in foundry bomb body invoices, Delfasco sought $1,458,490.57. (R4, tab 43; *see also* AGI ¶ 23) After the contracting officer denied the claim on February 15 as inconsistent with various terms of the EPA clause, and the parties discussed the matter by phone on February 25, Delfasco revised its certified claim on April 26. It addressed the contracting officer's comments and increased the amount sought to $1,635,650 due to the discovery of evidence for additional castings. (R4, tabs 47, 54 at 712-19, tab 70 at 792-96) On May 13, 2022, Delfasco appealed the contracting officer's February 15 decision, which was docketed as ASBCA No. 63280. By final decision dated July 7, 2022, the contracting officer denied the revised claim, in sum due to a lack of supporting information and failure to comply with the EPA clause's notice requirements (R4, tab 70 at 792-96). Delfasco appealed that decision on September 2, 2022, which the Board docketed as ASBCA No. 63402. The appeals were consolidated on September 13, 2022. The consolidated appeal stems from claims that only concern the bomb body castings (GPFF ¶¶ 22-23; AGI ¶¶ 22-23).

---

[1] The government numbered its pages in its Rule 4 submission with leading zeros, which we omit here.

<u>DECISION</u>

"[S]ummary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Goodloe Marine, Inc.*, ASBCA Nos. 62106, 62446, 22-1 BCA ¶ 38,053 at 184,774 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A non-movant seeking to defeat the suggestion that there are no genuine issues of material fact may not rest upon its pleadings, but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The government advances multiple arguments in support of summary judgment but we focus only upon the first, summarized by the government as follows: "Since (1) the bomb bodies are made of iron, (2) the EPA clause only applies to steel, and (3) [Delfasco's] claim is based on the costs it incurred in making the bomb bodies, [Delfasco] cannot rely on the steel EPA clause" as a basis for recovery (gov't mot. at 18). Delfasco responds that the contract does not define steel, and contends the gray iron contained in the bomb bodies is steel. Because steel is undefined it argues the meaning of the contract is in dispute and we must deny summary judgment and proceed to a hearing of extrinsic evidence to determine the word's meaning. Its primary purported evidence includes citation to industry websites purporting to define steel and gray iron. It also relies upon the absence of any denials by the contracting officer's decisions that the bomb bodies were steel.

Determining the meaning of a contract starts with its language. *TEG-Paradigm Env't, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (citing *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc)). "When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the [Board] may not look to extrinsic evidence to interpret its provisions." *Id.* "Construction of the language of the contract to determine whether there is an ambiguity is a question of law. . . ." *Gardiner Kamya & Assocs. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006). Extrinsic evidence cannot be used to create an ambiguity where none otherwise exists. *Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994). Contract terms are ambiguous when, read as a whole, they are susceptible to more than one reasonable interpretation. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996).

The EPA clause unambiguously limits its application to "the price for STEEL only" (R4, tab 2 at 42). Our task is to determine the meaning of the word steel and whether it includes the gray iron used to make the bomb bodies. There is no indication in the contract that the parties contemplated steel or gray iron to depart from their plain and ordinary meanings. *See Lanclos v. United States*, 40 F.4th 1352, 1356 (Fed. Cir. 2022) ("see[ing] no reasonable basis to conclude that the parties sought to define

3

'guarantee' or to give the term an alternative meaning"). Accordingly, it is appropriate to consult their definitions. *Id.* at 1355. Steel's ordinary definition is "commercial iron that contains carbon in any amount up to about 1.7 percent as an essential alloying constituent, is malleable when under suitable conditions, *and is distinguished from cast iron by its malleability and lower carbon content.*" MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/steel (last visited Aug. 18, 2023) (emphasis added). Another is "any of various modified forms of iron, artificially produced, *having a carbon content less than that of pig iron. . . .*" DICTIONARY.COM, https://www.dictionary.com/browse/steel (last visited Aug. 18, 2023) (emphasis added).[2] Gray iron is defined separately as "*pig or cast iron* containing much graphitic carbon which causes its fracture to be dark gray." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/gray%20iron (last visited Aug. 18, 2023) (emphasis added). One more similarly says it is "*pig iron or cast iron* having much of its carbon in the form of graphite and exhibiting a gray fracture." DICTIONARY.COM, https://www.dictionary.com/browse/gray-iron (last visited Aug. 18, 2023) (emphasis added). The definitions distinguish steel from cast or pig iron, which form gray iron, dictating they are not the same. Given the clarity of both the language of the EPA clause limiting its scope to steel, as well as the definitions of steel and gray iron, the clause cannot reasonably be read to encompass gray iron.

Delfasco cites several Board decisions entertaining extrinsic evidence (app. opp'n at 12-18). Contrary to this matter, those cases required more development of the record to ascertain the meaning of the contracts or to resolve additional issues.[3] Here, the EPA clause is clearly limited to steel. Steel is readily defined and is not gray iron.

---

[2] Still another is "[a] generally hard, strong, durable, malleable alloy of iron and carbon, usually containing between 0.2 and 1.5 percent carbon, often with other constituents. . . ." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=steel (last visited Aug. 18, 2023).

[3] *See Maersk Line, Ltd.*, ASBCA Nos. 59791, 59792, 16-1 BCA ¶ 36,405 (permitting extrinsic evidence to resolve "broader issues in these appeals"); *Hanley Indus., Inc.*, ASBCA No. 58198, 16-1 BCA ¶ 36,244 (denying summary judgment because the contract was not clear); *DynCorp Int'l LLC*, ASBCA No. 59244, 15-1 BCA ¶ 36,084 (finding review of extrinsic evidence necessary to discern the parties' contractual intent); *Raytheon Co.*, ASBCA No. 58212, 15-1 BCA ¶ 35,999 (requiring a hearing into the reasonableness of party interpretations); *United Launch Servs., LLC*, ASBCA No. 56850 *et al.*, 14-1 BCA ¶ 35,511 (concluding the key contract term was unclear and genuine issues existed regarding its meaning); *Trace Sys., Inc.*, ASBCA No. 57574, 11-2 BCA ¶ 34,861 (finding the contract ambiguous); *L-3 Servs., Inc.*, ASBCA Nos. 56304, 56335, 09-2 BCA ¶ 34,156 (requiring a better record to determine the reasonableness of the parties' interpretations); *AshBritt, Inc.*, ASBCA Nos. 56145, 56250, 09-2

4

Nevertheless, "[e]ven when a contract is unambiguous, it may be appropriate to turn to one common form of extrinsic evidence—evidence of trade practice and custom." *TEG-Paradigm,*, 465 F.3d at 1338 (citing *Hunt Constr. Grp., Inc. v. United States*, 281 F.3d 1369, 1373 (Fed. Cir. 2002)). Such evidence "may be useful in interpreting a contract term having an accepted industry meaning different from its ordinary meaning—even where the contract otherwise appears unambiguous." *Id.* (quoting *Hunt Constr.*, 281 F.3d at 1373); *see also CiyaSoft Corp.*, ASBCA No. 59913, 22-1 BCA ¶ 38,145 at 185,275-76 (denying summary judgment given a showing of a conflicting industry interpretation of a contract term). Delfasco's proffered extrinsic evidence might be characterized as evidence of trade practice. However, we "should accept evidence of trade practice only where a party makes a showing that it relied reasonably on a competing interpretation of the words when it entered the contract." *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999). "This requirement helps ensure that the evidence of trade practice and custom truly reflects the intent of the contracting party, and avoids according undue weight to that party's purely *post hoc* explanations of its conduct." *Id.*; *see also Advanced Eng'g & Plan. Corp.*, ASBCA Nos. 53366, 54044, 05-1 BCA ¶ 32,806 at 162,317 (rejecting consideration of trade practice when not relied upon by the contractor).

Delfasco's brief proclaims that "[i]t was always Delfasco's understanding and intent that the term 'STEEL,' as used in the EPA clause, encompassed the bomb body castings Delfasco purchased for this Contract" (app. opp'n at 13-14). However, that statement is purely the advocacy of counsel with no citation to any support, such as a declaration or other competent evidence from the record. It does not itself constitute evidence. *H2L1-CSC, JV*, ASBCA No. 62086, 21-1 BCA ¶ 37,956 at 184,340. That no one associated with Delfasco testified in support of its counsel's claims is no mere technicality. Accordingly, Delfasco has failed to make a showing that when it entered the contract it interpreted steel to mean gray iron. It has not met the prerequisite necessary for us to entertain extrinsic evidence of trade practice.

Though Delfasco has not made the necessary threshold showing of reliance to introduce evidence of trade practice, even if we were to consider what Delfasco has offered, it does not suggest that industry considers gray iron to be the same as steel.

---

BCA ¶ 34,300 (finding the contract ambiguous); *PK Contractors, Inc.*, ASBCA No. 53576, 04-2 BCA ¶ 32,661 (finding the contract ambiguous); *Int'l Source and Supply, Inc.*, ASBCA Nos. 52318, 52446, 00-1 BCA ¶ 30,875 (holding the Board could not discern parties' contractual intent from the language of the agreement so resorted to extrinsic evidence); *Fairchild Indus., Inc.*, ASBCA No. 46197, 98-2 BCA ¶ 29,767 (denying summary judgment given conflicting evidence in the record as to the parties' intended meaning of the term "Phase-out Costs").

5

If anything, the websites it relies upon confirm the definitions set out above. In a discussion of graphite cast iron, a site called "Total Materia," says that "[c]ast irons, *like steels*, are basically alloys of iron and carbon," distinguishing the two materials. *Vermicular Graphite Cast Iron*, TOTALMATERIA.COM, https://www.totalmateria.com/page.aspx?ID=CheckArticle&site=kts&NM=263 (last visited Aug. 18, 2023) (emphasis added).[4] Another, called "AZO Materials," describes the difference, saying gray irons "are iron-carbon alloys (and a form of cast iron) with carbon contents in excess of 2%, generally in the range of 2 to 4%. . . ."[5] Consistent with our prior observation about the lower carbon in steel, it explains gray irons "differ from steels in that the carbon present exceeds the solubility limit of 1.7%." *An Introduction to Grey Iron*, AZO MATERIALS, https://www.azom.com/article.aspx?ArticleID=783 (last visited Aug. 18, 2023). The website for "Zen Young Technologies & Solutions," distinguishes steel and cast or ductile iron, noting that steel contains 0.1 to 1.7% carbon, while separately stating that cast iron is 1.7 to 5% carbon. *Characteristics of Ductile Iron*, ZEN YOUNG, https://www.zen-young.com/news/characteristics-of-ductile-iron.html (last visited Aug. 18, 2023). "Metallurgy for Dummies | The Metallurgy's Blog for Beginners," says that "[c]arbon (C) and silicon (Si) are the main alloying elements" of gray iron, "with the amount ranging from 2.1 to 4 wt% and 1 to 3 wt% respectively. Iron alloys with less carbon content are known as steel." *Grey Cast Iron – Meaning and Definition*, METALLURGY FOR DUMMIES, https://www.metallurgyfordummies.com/what-is-grey-cast-iron.html (last visited Aug. 18, 2023). An article from "Springer Link," compares ductile cast iron to steel, observing steels have "by definition much lower carbon contents." SPRINGER LINK, https://link.springer.com/article/10.1007/s13632-018-0478-6 (last visited Aug. 18, 2023). None of the sources cited by Delfasco say that gray iron is the same material as steel (app. opp'n at 16-17).

Delfasco's other purported evidence is its contention that the contracting officer did not object, either in her two claim denials or in the parties' intervening February 25, 2022, phone call, to Delfasco's suggestion that the bomb bodies are composed of steel.[6] It maintains this constitutes pre-dispute evidence that the government also believes the

---

[4] The government does not challenge the authenticity of the web sources cited by Delfasco, so we accept them for the purpose of this discussion.

[5] Another source provided by Delfasco, the ASM Specialty Handbook Cast Irons, generally reiterates these percentages, saying "[b]ecause carbon is dissolved in the molten iron in amounts of about 2.8 to 4.0%, gray iron has the lowest casting temperature, the least shrinkage, and the best castability of all ferrous metals" (app. opp'n, ex. B at pdf p. 22).

[6] Delfasco's only cited evidence of the contents of the February 25, 2022, phone call is the final decision (app. opp'n at 14 (citing R4, tab 70 at 792-96)). That document does not purport to fully recite what was said during that discussion.

6

gray iron in the bomb bodies is steel. Though it is true that "[t]he parties' interpretation of the contract during performance, before a dispute arose, is demonstrative of their contractual intent," *Parsons-UXB Joint Venture*, ASBCA No. 56481, 13-1 BCA ¶ 35,378 at 173,598 (citing *Max Drill, Inc. v. United States*, 427 F.2d 1233, 1240 (Ct. Cl. 1970)), that principle applies to communications occurring prior to the circumstances giving rise to the dispute. *See ECC Int'l Constrs., LLC v. Sec'y of the Army*, 817 F. App'x 952, 955 (Fed. Cir. 2020). Here, those circumstances are the increased prices experienced by Delfasco and its resulting EPA claims. The government's final decisions and phone call did not predate the dispute events. Nor does Delfasco cite any authority for the proposition that failure by a contracting officer's denial to address every aspect of a claim constitutes evidence that the government consents to the points not discussed. *See Wilner v. United States*, 24 F.3d 1397, 1401-03 (Fed. Cir. 1994) (en banc) (holding a contracting officer's decision is not "an evidentiary admission of the extent of the government's liability," and the contractor must prove liability and damages *de novo* to the Board on a clean slate); *accord Wright Bros., the Bldg. Co., Eagle LLC*, ASBCA No. 62285, 23-1 BCA ¶ 38,255 at 185,777.

Two other short observations put forth by Delfasco are that iron ore is not used to produce gray iron and that gray iron is often stronger than steel. Neither point helps it establish that gray iron is steel. If anything, the latter suggests the opposite by distinguishing the two materials.

In summary, the EPA clause unambiguously applies only to steel. It is undisputed the bomb bodies that Delfasco claims have increased in price are composed of gray iron. The plain and ordinary meaning of steel does not encompass gray iron. Delfasco has not met the reliance standard necessary to induce us to consider extrinsic evidence of trade practice that might depart from the words' ordinary meanings. Even if it had, none of the evidence it offers sufficiently suggests that steel and gray iron are the same to establish a genuine issue that would defeat summary judgment for the government. Given our ruling that the gray iron contained in the bomb bodies is not steel, we do not consider the other grounds advanced by the government in support of its motion.

7

CONCLUSION

The government's motion for summary judgment is granted. The appeals are denied.

Dated: September 25, 2023

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63280, 63402, Appeals of Delfasco LLC, rendered in conformance with the Board's Charter.

Dated: September 25, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8

## CERTIFICATE OF COMPLIANCE

This certificate of compliance will hereby certify that the Appellant, Delfasco

LLC's brief complies with Rule 32(a)(7)(B) requiring that the brief have less than

14,000 words. According to the word counter the exact number of words in this

brief is 5988.


/s/ John J. O'Brien
JOHN J. O'BRIEN

March 26, 2024

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 26th day of March 2024, a copy of the foregoing "OPENING BRIEF OF APPELLANT, DELFASCO LLC" and the "ADDENDUM TO OPENING BRIEF OF APPELLANT, DELFASCO LLC" was filed electronically and served via the Court's ECF system.

/s/ John J. O'Brien